Filed 12/11/15; part. pub. order 1/7/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ARTYUN VARDANYAN,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>AMCO INSURANCE COMPANY,<br><br>    Defendant and Respondent. | F069953<br><br>(Super. Ct. No. 11CECG02112)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Mark W. Snauffer, Judge.

Kerley Schaffer, J. Edward Kerley, Dylan Schaffer; Hereford Kerley, J. Edward Kerley; Law Office of Dylan Schaffer and Dylan Schaffer for Plaintiff and Appellant.

Amy Bach and Daniel Wade for amicus curiae on behalf of Plaintiff and Appellant.

Hines Hampton and Brian L. Pelanda for Defendant and Respondent.

-ooOoo-

Plaintiff appeals from the judgment entered after the trial court granted defendant's motion for directed verdict in this action alleging breach of an insurance contract and bad faith denial of coverage.  The trial court expressed its intention to

instruct the jury that plaintiff's property damage loss was covered by his policy only if it was caused by perils specifically listed in the collapse coverage provision and no others. Because it was undisputed that other perils contributed to some extent to the loss, plaintiff conceded he could not prevail if the jury was so instructed. The trial court also granted defendant's motion for a directed verdict on plaintiff's claim for punitive damages. Plaintiff appeals, contending the trial court's intended jury instruction violated the efficient proximate cause doctrine and there was sufficient evidence to permit the jury to determine whether plaintiff met his burden of proving his claim for punitive damages. We find no error in the ruling on the punitive damages claim. We find merit in plaintiff's challenge to the proposed jury instruction. Accordingly, we reverse and remand for retrial of plaintiff's causes of action alleging breach of contract and breach of the covenant of good faith and fair dealing, but not the claim for punitive damages.

### *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff owned a rental house covered by an insurance policy issued by defendant. On December 6, 2010, he submitted a claim that stated plaintiff believed there was water damage to the flooring that might have come from the walls, and there was mold as well. Defendant sent an independent insurance adjustor, Douglas Hoppe, to investigate the claim the next day. Hoppe viewed the condition of the house and took photographs. His initial report stated the house seemed to be settling, possibly due to a water leak. The floors in some of the rooms were sinking, the bathtub was sinking, water was drizzling out of both the shower head and the bathtub faucet, the front door would not open, and there was mold in every room. Plaintiff told the adjustor the tenants had reported the problem to him two or three months before, and he had asked them to move out so repairs could be made. Plaintiff reported his claim to defendant after the tenants moved out.

The independent adjustor recommended defendant have an engineer inspect the house. In January 2011, Michael Jundt, a structural engineer, inspected the site and took

2.

photographs; he returned later, with plaintiff's permission, to cut a hole in the floor to gain access to the subfloor area and investigate conditions below the house.

Jundt's report reflected multiple potential leaks in the roof, gutters in disrepair, downspouts that originally deposited water at the base of the walls of the house, but had become disconnected from the gutters, and evidence that a faucet or hose had been spraying the wall in one area for a significant length of time. He found water damage corresponding to these areas. Jundt reported the toilet and bathtub both leaked, and the floor beneath the bathtub had sunk two and a half inches. The northwest bedroom had a depression in the floor, eight inches deep and five to six feet across; there was damage due to leakage from the toilet in the closet of that bedroom. The closet in the southwest bedroom showed evidence of past damage and multiple repairs. The kitchen was water damaged and showed evidence of past termite infestation. The wood at the base of the back door to the kitchen and the utility room floor near the exterior door were also rotted and damaged by past termite infestation. The living room floor was not level and was separating from the wall.

The subfloor area lacked adequate ventilation, preventing the moisture below the house from drying. Jundt opined the original construction of the subfloor area without proper ventilation was not up to code at the time of construction. The various sources of moisture—roof leaks, gutters and downspouts that did not channel the water away from the house, a faucet spraying water on the exterior of the house, leaking toilet and bathtub, and humidity—contributed to the damage to the house, along with poor construction, termite damage and decay.

Defendant denied coverage of plaintiff's loss, citing multiple policy exclusions, including exclusions for damage caused by seepage or leakage of water from a plumbing system, deterioration, mold, wet or dry rot, settling of foundations, walls or floors, earth movement, water damage, neglect, weather conditions, acts or decisions of any person, and faulty or defective design, workmanship, repair, construction, or maintenance.

3.

Plaintiff then retained a public adjustor, Michael DeCesare, to assist him in his claim. DeCesare wrote to defendant and expressed his disagreement with defendant's conclusion that the loss was not covered by the policy.

Dissatisfied with defendant's response to DeCesare's communications, plaintiff filed suit against defendant, alleging breach of the insurance contract and breach of the implied covenant of good faith and fair dealing. Plaintiff alleged the house collapsed and the policy provided coverage for collapse. The policy, excluded coverage for collapse, "other than as provided in OTHER COVERAGES 9." Other Coverage 9 provided coverage for losses involving collapse of a building or part of a building "caused only by one or more" of a list of perils, including hidden decay, hidden insect damage, and weight of contents, equipment, or people.

At trial, Hoppe testified to the damage he observed in his investigation of the loss. Jundt testified to his investigation of the loss and gave his opinions regarding the causes of the damage to plaintiff's house. Testimony from plaintiff and the former tenants addressed the condition of the house prior to the time plaintiff reported the damage to defendant.

Plaintiff's expert, Robert Bresee, a general contractor, testified to perceived errors in Jundt's report, and to his opinions of the condition of the house and the cause of the damage. He had to open up the floor to investigate the cause of the damage. He noted the floors in the northwest bedroom and the living room were resting on the ground, and opined the cause was dry rot, decay, and termite damage. He opined the water in the subfloor area came from within the walls, where it was not readily visible to occupants of the house.

The evidence presented by both sides indicated there were multiple causes of the damage to plaintiff's house. Plaintiff's theory was that the coverage for collapse due to hidden decay or hidden insect damage applied, if either of those perils was the predominant cause of the collapse of the structure. Plaintiff requested that the trial court

give a standard jury instruction explaining that, when a loss is caused by a combination of covered and excluded risks, the loss is covered if the most important or predominant cause is a covered risk. (CACI No. 2306.) Defendant instead proposed a special jury instruction (No. 12) placing on plaintiff the burden of proving the collapse of the house was "caused *only* by one or more" of the perils listed in Other Coverage 9. Defendant's special instruction No. 12 specified that there was no coverage if the cause of the collapse involved any peril other than those listed. Plaintiff opposed giving the special instruction proposed by defendant.

When the trial court indicated its intention to give part of defendant's proposed special instruction No. 12, plaintiff indicated that giving such an instruction was tantamount to directing a verdict in favor of defendant, because there was no dispute the damage to the house was caused by perils in addition to those listed in Other Coverage 9. Defendant then moved for a directed verdict on both causes of action. The trial court granted the motion, concluding defendant's proposed special instruction was legally correct, based on the unambiguous language of the Other Coverage 9 provision of the policy. The trial court entered judgment in favor of defendant, and plaintiff appeals.

## *DISCUSSION*

### I.    Standard of Review

A directed verdict is reviewed de novo. (*Brassinga v. City of Mountain View* (1998) 66 Cal.App.4th 195, 210.) "'On appeal from a judgment on a directed verdict, appellate courts view the evidence in the light *most favorable to appellant*. All conflicts must be resolved and inferences drawn in appellant's favor; and the judgment will be reversed if there was substantial evidence ... tending to prove all elements of appellant's case.'" (*Colbaugh v. Hartline* (1994) 29 Cal.App.4th 1516, 1521.) Interpretation of statutes and contracts is also reviewed de novo. (*Morgan v. United Retail Inc.* (2010) 186 Cal.App.4th 1136, 1142; *Consolidated World Investments, Inc. v. Lido Preferred, Ltd.* (1992) 9 Cal.App.4th 373, 378.)

5.

## II.     Contract provisions

Plaintiff's insurance policy indicated Coverage A covered his dwelling.  The basic insuring provision of the policy, defining "PERILS INSURED AGAINST," stated:

"We insure for risk of direct physical loss to the property described in Coverages A and B except

"1  collapse other than as provided in Other Coverage 9 …."

The Other Coverage 9 section contained a list of six items:

"**9  Collapse**  We insure for risk of direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following

"a  Perils Insured Against in Coverage C  Personal Property  These perils apply to covered building and personal property for loss insured by this other coverage

"b  hidden decay

"c  hidden insect or vermin damage

"d  weight of contents equipment animals or people

"e  weight of rain which collects on a roof

"f  use of defective material or methods in construction remodeling or renovation if the collapse occurs during the course of the construction remodeling or renovation[.]"

The "GENERAL EXCLUSIONS" section of the policy contained exclusions for earth movement, water damage, neglect by the insured, inadequate or defective design, workmanship, construction, remodeling, or materials, and inadequate or defective maintenance.

Plaintiff contends Other Coverage 9 provides coverage for the damage to his house, because the building, or part of the building, collapsed and the predominant cause of the loss was hidden decay and hidden insect damage.  Plaintiff contends that, pursuant to the efficient proximate cause doctrine, because the predominant cause of the loss was a

6.

covered peril, the policy provides coverage for the loss despite any other peril that contributed to the loss, and the trial court should have determined that a jury instruction to that effect should have been given.

## III. Efficient proximate cause doctrine

In California, the efficient proximate cause doctrine is "the preferred method for resolving first party insurance disputes involving losses caused by multiple risks or perils, at least one of which is covered by insurance and one of which is not." (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 753 (*Julian*).) It is codified in Insurance Code section 530, which provides: "An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause."

Insurance Code section 532 appears to conflict with Insurance Code section 530: "If a peril is specially excepted in a contract of insurance and there is a loss which would not have occurred but for such peril, such loss is thereby excepted even though the immediate cause of the loss was a peril which was not excepted." (Ins. Code § 532.) The Supreme Court resolved the apparent conflict between these sections in *Sabella v. Wisler* (1963) 59 Cal.2d 21. In *Sabella*, the insurer relied on Insurance Code section 532 in arguing that, if the loss would not have occurred "'but for'" the excluded peril, then the exclusion precluded coverage for the loss. (*Sabella,* at p. 33.) The court rejected that argument: "[I]f section 532 were construed in the manner contended for by defendant insurer, where an excepted peril operated to any extent in the chain of causation so that the resulting harm would not have occurred 'but for' the excepted peril's operation, the insurer would be exempt even though an insured peril was the proximate cause of the loss." (*Ibid*.) That result would be contrary to section 530, which provided for coverage when the peril insured against proximately caused the loss. (*Sabella,* at p. 33.) The court interpreted the "but for" cause referred to in section 532 to mean the peril that

7.

proximately caused the loss, and the "'immediate cause of the loss'" to mean the peril immediate in time to the occurrence of the damage. (*Sabella,* at pp. 33–34.) The court established this general rule: "'[I]n determining whether a loss is within an exception in a policy, where there is a concurrence of different causes, the efficient cause—the one that sets others in motion—is the cause to which the loss should be attributed, though the other causes may follow it, and operate more immediately in producing the disaster.'" (*Id.* at pp. 31–32; *Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 404 (*Garvey*).)

The efficient proximate cause referred to in *Sabella* has also been called the predominant cause or the most important cause of the loss. (*Garvey*, *supra*, 48 Cal.3d at p. 403; *Julian*, *supra,* 35 Cal.4th at p. 754.) "By focusing the causal inquiry on the most important cause of a loss, the efficient proximate cause doctrine creates a 'workable rule of coverage that provides a fair result within the reasonable expectations of both the insured and the insurer.'" (*Julian,* at p. 754.)

"Policy exclusions are unenforceable to the extent that they conflict with [Insurance Code] section 530 and the efficient proximate cause doctrine." (*Julian*, *supra*, 35 Cal.4th at p. 754.) Thus, an insurer cannot contract around the efficient proximate cause doctrine to give broader effect to its policy exclusions.

In *Garvey*, the plaintiffs' house was insured with an all-risk homeowner's policy issued by the defendant. (*Garvey*, *supra*, 48 Cal.3d at p. 399.) The policy insured against all risks of physical loss to the property covered, unless coverage was excluded. (*Ibid.*) It excluded losses "'caused by, resulting from, contributed to or aggravated by any earth movement …' and losses caused 'by ... settling … of … foundations, walls, floors, roofs or ceilings.'" (*Id.* at pp. 399–400.)

An addition to the plaintiffs' house began to pull away from the main structure, and they filed a claim with the insurer. The defendant denied the claim, based on the exclusions for earth movement and settling. (*Garvey*, *supra*, 48 Cal.3d at p. 400.) The

plaintiffs sued, contending the loss was caused by contractor negligence, and such negligence was not an excluded peril under the policy. (*Ibid*.) The court held the efficient proximate cause rule applied to the plaintiffs' first party property damage claim, rejecting application of a concurrent proximate cause rule applicable in third party liability insurance cases. (*Id*. at pp. 405–408.) The court reversed the trial court's directed verdict in favor of the plaintiffs and remanded so a properly instructed jury could decide which peril was the efficient proximate cause of the plaintiffs' loss. (*Id*. at pp. 412–413.)

Thus, although the policy purported to exclude coverage if earth movement or settling merely "contributed to" the loss, the court held the efficient proximate cause doctrine applied, so that the exclusion precluded coverage only if an excluded peril—earth movement or settling—was the efficient proximate cause of the plaintiffs' loss. (*Garvey*, *supra*, 48 Cal.3d at pp. 412–413.)

In *Howell v. State Farm Fire & Casualty Co*. (1990) 218 Cal.App.3d 1446 (*Howell*),[1] the plaintiff's property was located on a hillside subject to landslides. (*Howell,* at p. 1449.) One summer, a fire destroyed the vegetation on the slope; the following winter, unusually heavy rains combined with the bare slope to cause a landslide, which damaged structures on the plaintiff's property. The plaintiff's expert concluded the landslide probably would not have occurred if the groundcover had not been destroyed. (*Ibid*.)

The plaintiff's homeowners policy insured against accidental direct physical loss to the dwelling and other structures. (*Howell*, *supra*, 218 Cal.App.3d at p. 1449.) It excluded coverage of loss "'which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of:

---

[1]    Disapproved on another ground in *Reid v. Google, Inc*. (2010) 50 Cal.4th 512, 532, footnote 7.

9.

a) the cause of the excluded event; or b) other causes of the loss; or c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss ....'" (*Ibid*.) Earth movement and water damage were on the list of excluded events. (*Id*. at pp. 1449–1450.)[2]

After the plaintiff's insurer denied her claim, she sued; the defendant moved for summary judgment, relying on the exclusions for earth movement and water damage. (*Howell*, *supra*, 218 Cal.App.3d at p. 1451.) The plaintiff argued the fire was the efficient proximate cause of the loss, because it permitted the landslide to occur. The trial court granted the defendant's motion. (*Ibid*.)

On appeal, the defendant contended the exclusion precluded coverage because the loss would not have occurred but for the excluded peril of earth movement. The court responded: "Stated simply, the important question presented by this case is whether a property insurer may contractually exclude coverage when a covered peril is the efficient proximate cause of the loss, but an excluded peril has contributed or was necessary to the loss. We conclude that a property insurer may not limit its liability in this manner, since the statutory and judicial law of this state make the insurer liable whenever a covered peril is the 'efficient proximate cause' of the loss, regardless of other contributing causes. Consequently, the policy exclusions at issue in this case are not enforceable to the extent they conflict with California law." (*Howell*, *supra*, 218 Cal.App.3d at p. 1452, fn. omitted.) Because there was a triable issue of fact regarding whether the fire or earth movement was the efficient proximate cause of the loss, the court reversed the summary judgment. (*Id*. at pp. 1459–1460.)

---

[2]     There were also rental dwellings and a commercial kennel on the plaintiff's property. The property damage policies covering those structures contained provisions and exclusions similar to those contained in the homeowners policy. (*Howell*, *supra*, 218 Cal.App.3d at pp. 1449–1451.)

### A.    Plaintiff's contentions

Plaintiff contends the language "caused only by one or more of the following" in Other Coverage 9 means that this is a complete list of the perils causing collapse that are covered under the policy. If any one or any combination of the listed perils causes the collapse, the loss is covered. If some unlisted peril contributes to the collapse, the efficient proximate cause doctrine requires that the jury determine which cause is the predominant or most important. If the predominant cause is a peril listed in Other Coverage 9, then the loss by collapse would be covered. If the predominant cause is not a listed peril, then the loss would not be covered.

Consistent with this interpretation, plaintiff requested that the jury be instructed with CACI No. 2306, which provides:

> "You have heard evidence that the claimed loss was caused by a combination of covered and excluded risks under the insurance policy. When a loss is caused by a combination of covered and excluded risks under the policy, the loss is covered only if the most important or predominant cause is a covered risk."

### B.    Defendant's contentions

Defendant contends "caused only by one or more of the following" in Other Coverage 9 has a more restrictive effect than plaintiff's interpretation gives it. Defendant contends the use of the word "only" means that a collapse is a covered loss only if no peril other than those listed contributes to the collapse. In its view, the decision in *Julian, supra,* 35 Cal.4th 747, authorizes the use of interactive perils to define an exclusion, so it is permissible to cover collapse caused only by one or a combination of specified perils. Defendant contends the efficient proximate cause doctrine does not apply to such a provision. Under defendant's interpretation, if any peril other than those listed in Other Coverage 9 contributes to the collapse in any way or to any degree, then coverage is excluded.

11.

The trial court agreed with defendant and indicated it would instruct the jury with defendant's proposed special instruction No. 12, and would not give CACI No. 2306. Defendant's proposed special instruction, as the trial court intended to give it, states:

> "Mr. Vardanyan contends that the damage to his property is covered under the insurance policy's provision for 'collapse' to a building or any part of a building caused by 'hidden decay' or 'hidden insect or vermin damage.'

> "If you find that the property or a part of the property collapsed, Mr. Vardanyan bears the burden of proving that the collapse was caused *only* by one or more of the following:

> "(1) Fire or lightning; windstorm or hail; explosion; riot or civil commotion; aircraft; vehicles; smoke; vandalism or malicious mischief; damage by burglars; falling objects; weight of ice, snow, or sleet; accidental discharge or overflow of water or steam from within a plumbing, heating, or air conditioning system, or [from] within a household appliance; sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning system, or an appliance for heating water; freezing of a plumbing, heating or air conditioning system or of a household appliance; sudden and accidental damage from artificially generated electrical current;

> "(2) Hidden decay;

> "(3) Hidden insect or vermin damage;

> "(4) Weight of contents, equipment, animals or people;

> "(5) Weight of rain which collects on a roof;

> "(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

> "The insurance policy's coverage for collapse does not apply if the cause of the collapse involved any cause other than those listed above."

## IV. *Julian v. Hartford Underwriters Ins. Co.*

In *Julian*, heavy rains caused the slope above the plaintiffs' home to fail; this led to a landslide which caused a tree to crash into the plaintiffs' house. (*Julian*, *supra*, 35

Cal.4th at p. 751.) Their homeowners policy insured against risks of direct physical loss to property, unless the loss was excluded. The exclusions section provided: "We do not insure against loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss: .…" (*Ibid.*) The list that followed included earth movement (defined to include landslide) and water damage. A second exclusion provided a loss was not covered if it was caused by weather conditions. "'However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in [the prior list] to produce the loss .…'" (*Id.* at pp. 751–752.) It was undisputed that losses proximately caused by weather conditions that did not contribute with an excluded cause were covered by the policy. (*Id.* at p. 750.)

The insurer moved for summary judgment, contending the policy excluded each of the perils that might be the efficient proximate cause of the loss: earth movement, third party negligence, and weather conditions that contributed with landslide, an excluded cause. (*Julian*, *supra*, 35 Cal.4th at p. 752.) The trial court granted the motion. The court summarized the plaintiffs' argument on appeal:

> "The policy purports to exclude losses caused by weather conditions, but only where weather conditions 'contribute in any way with' earth movement (e.g., landslide), water damage (e.g., flood), or another cross-referenced, excluded peril. Under the plain terms of the policy, losses caused by weather conditions that do not 'contribute in any way with' earth movement, water damage, etc. are covered. Thus the coverage inquiry turns on whether earth movement, water damage, or the like 'contribute[d] in any way with' weather conditions to create a loss. This 'contribute[s] in any way' language, they posit, has the same sweeping and pernicious effect as the policy terms involved in *Howell* and *Garvey* had, in that it allows the insurer to defeat coverage for a loss proximately caused by weather conditions merely by finding a remote peril somewhere—no matter how distant, minor, or independent from the weather conditions—in the causal background. Hartford, meanwhile, argues that the weather conditions clause properly excludes a specific peril, and that neither [Insurance Code] section 530 nor the efficient proximate cause doctrine prohibits it from

13.

defining excluded perils as it chooses." (*Julian*, *supra*, 35 Cal.4th at pp. 758–759.)

The court framed the threshold question as: "whether [Insurance Code] section 530 and the efficient proximate cause doctrine inflexibly prohibit an insurer from insuring against some manifestations of weather conditions, but not others." (*Julian*, *supra*, 35 Cal.4th at p. 759.) The court concluded they did not. (*Ibid*.) It expressed concern that, in some situations, the "'contribute in any way with'" language linking weather conditions to other excluded perils could be used to circumvent the efficient proximate cause doctrine. (*Id*. at p. 760.) In *Julian*, however, the court addressed "only the application of the weather conditions clause to a loss occasioned by a rain-induced landslide." (*Ibid*.) It considered the peril of rain-induced landslide to be "a genuine one, not a mere drafting fiction," and a commonly understood risk of loss. (*Ibid*.) The landslide was not an independent cause of the plaintiffs' loss, but was dependent on the weather condition of heavy rains. The court concluded: "[T]o the extent the weather conditions clause excludes the specific peril of rain inducing a landslide, there is no violation of section 530 or the efficient proximate cause doctrine." (*Ibid*.)

## V.     Application to This Case

### A.     *Contract interpretation*

"As a question of law, the interpretation of an insurance policy is reviewed de novo under well-settled rules of contract interpretation." (*E.M.M.I. Inc. v. Zurich American Ins. Co*. (2004) 32 Cal.4th 465, 470.) The mutual intention of the parties as it existed at the time of contracting governs interpretation. (Civ. Code, § 1636.) "'Such intent is to be inferred, if possible, solely from the written provisions of the contract. [Citation.] The "clear and explicit" meaning of these provisions, interpreted in their "ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage" [citation], controls judicial interpretation.'" (*Waller v. Truck Ins. Exchange, Inc*. (1995) 11 Cal.4th 1, 18.) "'Any ambiguous terms are

14.

resolved in the insureds' favor, consistent with the insureds' reasonable expectations.'" (*Safeco Ins. Co. v. Robert S*. (2001) 26 Cal.4th 758, 763.) Policy exclusions are strictly construed; exceptions to exclusions are broadly construed in favor of the insured. (*E.M.M.I.*, at p. 471.)

The policy's coverage for plaintiff's house is all-risk or open peril coverage; the policy provides that plaintiff is insured "for risk of direct physical loss to the property," with specified exceptions or exclusions.[3] One of the exceptions to coverage is "collapse other than as provided in Other Coverage 9." As provided in Other Coverage 9, the policy covers collapse caused "only" by one or more of specified perils. As defendant construes this provision, it runs afoul of the efficient proximate cause doctrine. Defendant's construction would exclude coverage any time a peril not listed in Other Coverage 9 contributed to the loss, even minimally. Under defendant's construction, even if the collapse was predominantly caused by a listed peril, such as hidden decay or hidden insect damage, if an unlisted peril contributed to it in some minor way, coverage would be excluded.

*Julian* does not change the result. The policy provision in issue in *Julian* defined an exclusion from coverage. It took one specified peril and provided that coverage for it was excluded, but only when it combined with specified excluded perils. The court did not hold that the provision was valid in all cases. In fact, it expressed its concern that, under other circumstances, the provision could be used to circumvent the efficient proximate cause doctrine. (*Julian*, *supra*, 35 Cal.4th at p. 760.) *Julian* held only that the combination of perils in issue in that case effectively created a single peril (rain-induced landslide) that was a genuine peril, understandable to a reasonable insured. Therefore, the court concluded the provision did not violate the efficient proximate cause doctrine.

---

[3] "An all-risk policy covers risks of physical loss except those excluded under the terms of the insuring contract. Under an all-risk policy, the limits of coverage are defined by the exclusions." (*Benavides v. State Farm General Ins. Co*. (2006) 136 Cal.App.4th 1241, 1247.)

15.

Here, the policy provision in issue defines coverage, not an exclusion. It provides that collapse is covered if caused by specific listed perils. Under defendant's interpretation, if any of the specified perils combined with any other unspecified peril to cause the collapse, coverage would be excluded. Defendant has not shown that any of the listed perils plaintiff relies on for coverage, when combined with any unlisted peril defendant contends caused or contributed to the loss, created a single peril, that is a genuine peril, and that a reasonable insured would readily understand to be a separate, excludable peril.

The combination of a listed, covered peril or perils, with a host of potential unspecified, unlisted perils is in itself problematic. A reasonable insured would not anticipate that a listed, covered peril, if combined with some completely unrelated, unspecified peril, would result in an exclusion of coverage. This is particularly true when the provision is a coverage provision, not an exclusion; a reasonable insured would understand that, if one of the specified perils was the predominant or most important cause of the collapse, the loss would be covered.

Further, the combined peril in *Julian*—rain-induced landslide—was one to which each individual peril contributed substantially. It did not present a situation in which exclusion would result even though the otherwise excluded peril contributed only minimally to the loss, while the otherwise covered peril contributed the lion's share. Here, no such link has been shown between any listed and unlisted perils alleged to have contributed to the loss.

Defendant also cites *Freedman v. State Farm Ins. Co*. (2009) 173 Cal.App.4th 957 (*Freedman*) as another case approving the policy exclusion of interactive perils. The *Freedman* court concluded "*Julian* applie[d] straightforwardly" to its case. (*Id*. at p. 962.) We disagree.

In *Freedman*, a contractor drove a nail through a pipe while remodeling the plaintiffs' bathroom. (*Freedman*, *supra*, 173 Cal.App.4th at p. 959.) The plaintiffs

discovered it years later, after corrosion around the nail caused a leak and extensive water damage. The plaintiffs' all-risk policy contained exclusions for corrosion and water damage, including leakage from a plumbing system. (*Id*. at p. 960.) It provided that those exclusions would apply "regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss." The list that followed included defect, inadequacy, or fault in design, workmanship, or construction of any property, which the court referred to as a third party negligence provision. (*Ibid*.)

When the defendant denied coverage, the plaintiffs sued, contending the contractor's negligence, a covered peril, was the predominant or efficient proximate cause of the loss. (*Freedman*, *supra*, 173 Cal.App.4th at p. 959.) The defendant moved for summary judgment, contending it did not matter which peril was the efficient proximate cause of the loss because each possible efficient proximate cause was excluded: corrosion, leakage of water, and third party negligence when it interacted with an excluded peril, such as corrosion or leakage. (*Id*. at p. 961.) The court affirmed the trial court's grant of the defendant's summary judgment motion.

The court analyzed the application of *Julian* to its facts as follows:

"The third party negligence provisions of the Freedmans' policy exclude third parties' negligent conduct and defective workmanship whenever they interact with an excluded peril, just as the Julians' policy excluded weather conditions whenever they interacted with an excluded peril. Corrosion and continuous or repeated seepage or leakage of water are excluded perils under the Freedmans' policy, just as earth movement was excluded under the Julians' policy. Thus, the Freedmans' policy excludes contractor-negligence-induced corrosion and contractor-negligence-induced continuous or repeated seepage or leakage of water, just as the Julians' policy excluded a rain-induced landslide. The Freedmans have introduced no evidence that contractor negligence caused their loss in any way apart from the nail's role in triggering corrosion and a water leak, just as the Julians introduced no evidence that weather conditions caused their loss in any way apart from rain's role in triggering a landslide. Accordingly, the

Freedmans' loss is not covered, just as the Julians' loss was not covered." (*Freedman*, *supra*, 173 Cal.App.4th at pp. 962–963.)

The Julians' policy excluded weather conditions when they combined with specified excluded perils to cause the loss. The Freedman's policy, however, did not exclude coverage for third party negligence. Rather, it provided that the exclusions, including the exclusions for corrosion and leakage of water, would be effective regardless of whether other perils, including covered perils such as third party negligence, combined with the excluded perils to cause the loss. That provision violated the efficient proximate cause doctrine, because it would exclude coverage even if the covered peril was the predominant cause of the loss and the excluded peril was a minimal contributing factor.

The *Freedman* court equated "contractor-negligence-induced" corrosion and leakage with the Julians' rain-induced landslide without analysis. The *Julian* court did not conclude that every exclusion of interacting perils in a policy is acceptable and does not violate the efficient proximate cause rule. It stated that, if the exclusion of weather conditions when combined with other excluded perils would permit the insurer to deny coverage when the loss was caused 99 percent by weather conditions and 1 percent by earth movement or water damage, it "would raise troubling questions regarding the clause's consistency with the efficient proximate cause doctrine. Denial of coverage for such a loss would suggest the provision of illusory insurance against weather conditions, raising concerns similar to those implicated in *Howell*." (*Julian*, *supra*, 35 Cal.4th at p. 760.) The court rejected the insurer's "implicit argument that an insurer's ability to combine otherwise separate perils into a single peril will invariably render [Insurance Code] section 530 and the efficient proximate cause doctrine irrelevant." (*Ibid*.)

The *Julian* court analyzed only the specific combination of perils before it.

"Rain inducing a landslide is a commonly understood risk of loss and the frequent and direct causal relationship between rain and landslide is widely and easily understood. The Hartford engineer's report attested that the type of slope failure involved in this case was 'always' caused by water. The landslide here was not an independent causal agent in the Julians' loss; by

18.

all accounts it was dependent on the weather condition of heavy rains. And a reasonable insured would readily grasp the difference between a loss caused by weather conditions alone and a loss caused by weather conditions that induce a landslide, undermining the threat of illusory insurance. Accordingly, *to the extent the weather conditions clause excludes the specific peril of rain inducing a landslide*, there is no violation of [Insurance Code] section 530 or the efficient proximate cause doctrine." (*Julian*, *supra*, 35 Cal.4th at p. 760, italics added.)

The *Freedman* court did not similarly analyze the peril of "contractor-negligence-induced" corrosion or "contractor-negligence-induced" leakage. It did not discuss whether such combined perils were a commonly understood risk of loss, or whether there was a frequent and direct causal relationship between contractor negligence and corrosion, or between contractor negligence and leakage, that was widely and easily understood. The *Freedman* court simply seemed to assume an insurance policy could exclude any combination of interacting perils without violating the efficient proximate cause doctrine or Insurance Code section 530, despite the contrary statements in *Julian*.

We conclude plaintiff's interpretation of the Other Coverage 9 provision is the correct interpretation, consistent with the efficient proximate cause doctrine. A policy cannot extend coverage for a specified peril, then exclude coverage for a loss caused by a combination of the covered peril and an excluded peril, without regard to whether the covered peril was the predominant or efficient proximate cause of the loss. Other Coverage 9 identifies the perils that are covered when the loss involves collapse. If any other peril contributes to the loss, whether the loss is covered or excluded depends upon which peril is the predominant cause of the loss. To the extent the term "caused only by one or more" of the listed perils can be construed to mean the contribution of any unlisted peril, in any way and to any degree, would result in the loss being excluded from coverage, the provision is an unenforceable attempt to contract around the efficient proximate cause doctrine.

Accordingly, CACI No. 2306, rather than defendant's proposed special instruction No. 12, was the correct instruction to give to the jury. Because the trial court granted the

19.

motion for a directed verdict based on the effect the erroneous proposed jury instruction would have had on plaintiff's case, we must reverse the judgment and remand to the trial court.

### B.     Burden of proof

Plaintiff also contends defendant's proposed special instruction No. 12 was improper because it placed on plaintiff the burden of proving his loss fell within the provision of Other Coverage 9, instead of requiring defendant to prove that the loss was excluded.  We agree.

"When an issue of coverage exists, the burden is on the insured to prove facts establishing that the claimed loss falls within the coverage provided by the policy's insuring clause.  [Citations.]  Once the insured has made that showing, the burden is on the insurer to prove the claim is specifically excluded."  (*MRI Healthcare Center of Glendale, Inc. v. State Farm General Ins. Co*. (2010) 187 Cal.App.4th 766, 777.)  "[I]n an action upon an all-risks policy … (unlike a specific peril policy), the insured does not have to prove that the peril proximately causing his loss was covered by the policy.  This is because the policy covers *all risks* save for those risks specifically excluded by the policy.  The insurer, though, since it is denying liability upon the policy, must prove the policy's noncoverage of the insured's loss—that is, that the insured's loss was proximately caused by a peril specifically excluded from the coverage of the policy."  (*Strubble v. United Services Auto. Assn*. (1973) 35 Cal.App.3d 498, 504 (*Strubble*).)

In *Strubble*, the plaintiffs' house was insured with an all-risk property insurance policy that included an earthquake endorsement.  (*Strubble, supra*, 35 Cal.App.3d at pp. 502, 504.)  The house was built on a cliff that had experienced a landslide in the past.  After a minor earthquake, the plaintiffs discovered a crack in the ground beneath the house, which began to cause damage to the house and other improvements.  The parties disputed whether the cause was earthquake (a covered peril) or other earth movement (an excluded peril).  The court held the trial court properly instructed the jury that the

20.

defendant had the burden of proving the loss was proximately caused by an excluded peril. (*Id*. at pp. 503–505.) "[D]efendant insurer, in order to establish its defense of noncoverage of its policy, had the burden of proving that plaintiffs' loss was proximately caused by the excluded peril of earth movement other than earthquake (an included peril). To accomplish this defendant insurer had to prove that the included peril of earthquake did not proximately cause the loss that plaintiffs, the insured, suffered. In other words, it had to negative its exception (earthquake) to its exclusion (earth movement) since the burden of proof of its defense of noncoverage of the policy sued on rested on it." (*Id*. at pp. 504–505, fn. omitted.)[4]

CACI No. 2306 is consistent with *Strubble*. After instructing that a loss caused by a combination of covered and excluded risks is covered only if the most important or predominant cause is a covered risk, CACI No. 2306 continues with alternative paragraphs, either placing the burden on the defendant to prove the most important or predominant cause of the loss was a risk excluded under the insurance policy, or placing the burden on the plaintiff to prove the most important or predominant cause of the loss was a risk covered under the policy. The directions for use explain that "[f]or all-risk homeowner's policies … once the insured establishes basic coverage, the insurer bears the burden of proving the loss was caused by an excluded peril. In contrast, for 'named perils' policies (for example, fire insurance) the insured bears the burden of proving the loss was caused by the specified peril." (CACI No. 2306, Directions for Use.)

Plaintiff's policy provided all-risk coverage for his house. It did not name specific perils insured against. Rather, it provided that defendant covered the house for "risk of all direct physical loss to the property," with specified exceptions and exclusions. One

---

**4**      The rule is different when a specific peril policy or a third party liability policy is involved. With those policies, the burden is on the insured to prove that the loss falls within the insuring provisions of the policy. (See, e.g., *Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal.4th 1183, 1190.)

exception was for "collapse other than as provided in Other Coverage 9." Thus, the burden was on defendant to prove not just collapse, but collapse other than as provided in Other Coverage 9. Defendant's proposed special instruction No. 12 instead placed the burden on plaintiff to prove that the collapse fell within Other Coverage 9. Because the instruction improperly shifted the burden of proof, the trial court erred in its decision to instruct the jury with defendant's proposed special instruction and in granting defendant's motion for directed verdict based on the decision to give that instruction.

## VI. Directed Verdict on Punitive Damages Claim

Plaintiff argues that a reversal of the judgment will automatically vacate the entire judgment, including the directed verdict on the punitive damages claim, and entitle him to a retrial of his claim for punitive damages as if there had been no first trial. Alternatively, he argues there was sufficient evidence that the punitive damages issue should have been left for the jury to decide.

### A. *Automatic retrial of punitive damages claim*

A judgment may be partially reversed when the issues as to which it is reversed and those as to which it is affirmed are severable. "While the judgment must be reversed, there is no occasion to order a retrial of the issues which have already been correctly determined. The practice of reversing a judgment in part only is well settled in this court [citations], and should be followed where the error found to have been committed has affected the determination of but one or more of a greater number of distinct and severable issues or causes of action. (*Gray v. Cotton* (1913) 166 Cal. 130, 139.) The *Gray* court reversed and ordered retrial of the first cause of action of the plaintiff's pleading, but ordered that final judgment be entered on the remaining causes of action as determined in the original trial. (*Id*. at pp. 139–140.)

"In general, a reviewing court may order a limited retrial of only some issues if they are distinct from other issues and a partial retrial will not prejudice either party." (*Ginsberg v. Gamson* (2012) 205 Cal.App.4th 873, 904.) "The reviewing court will

22.

avoid ordering a retrial of all issues when some can 'be determined separately without prejudice to any party … to relieve the trial court and the parties of the unnecessary burden of relitigating issues that have been decided, and to respect and preserve the results of a trial on issues as to which the appellant has not shown error.'" (*Id*. at pp. 904–905.)

In *Kelly v. Haag* (2006) 145 Cal.App.4th 910, the court reversed the award of punitive damages in favor of the plaintiff on the ground it was not supported by sufficient evidence. The court did not permit retrial of the issue. "'When the plaintiff has had full and fair opportunity to present the case, and the evidence is insufficient as a matter of law to support plaintiff's cause of action, a judgment for defendant is required and no new trial is ordinarily allowed, save for newly discovered evidence.'" (*Id*. at p. 919.) The plaintiff was not entitled to a second bite of the apple. (*Ibid*.)

In *Baxter v. Peterson* (2007) 150 Cal.App.4th 673, the jury returned a verdict for the plaintiff and awarded compensatory and punitive damages. (*Id*. at p. 676.) On appeal, the court concluded the jury had been improperly instructed on both liability and compensatory damages, and the error was prejudicial. (*Id*. at p. 677.) It further concluded there was insufficient evidence to support the award of punitive damages. (*Id*. at pp. 678, 681.) Although it reversed both the judgment and the punitive damages award, it ordered retrial only of the liability and compensatory damages issues. The plaintiff "had 'a full and fair opportunity to present his case for punitive damages, and he does not contend otherwise.' [Citation.] When a punitive damage award is reversed based on the insufficiency of the evidence, no retrial of the issue is required. [Citation.] Accordingly, on remand, the issue of punitive damages shall not be retried." (*Id*. at p. 681.)

Plaintiff had a full and fair opportunity to present evidence in support of his punitive damages claim. He does not assert otherwise. He has not argued that his ability to present his claim for punitive damages was impeded by the trial court's interpretation

23.

of the policy provisions, its view that the efficient proximate cause doctrine did not apply, or its intention not to instruct with CACI No. 2306.  The trial court, after hearing all the evidence presented by plaintiff, concluded there was insufficient evidence from which a jury could find the oppression, fraud, or malice necessary to support an award of punitive damages.  If that ruling was not in error, we are not required to order retrial of the punitive damages issue, even though we reverse the judgment and remand for retrial of the breach of contract and bad faith claims.  Accordingly, we must consider whether the motion for directed verdict on plaintiff's claim for punitive damages was properly granted.

### B.      Review of the directed verdict

"A nonsuit or a directed verdict may be granted 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, … indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' [Citations.] Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury." (*In re Estate of Lances* (1932) 216 Cal. 397, 400 (*Lances*).)  The trial court may not weigh the evidence or judge the credibility of witnesses. (*Hilliard v. A.H. Robins Co*. (1983) 148 Cal.App.3d 374, 395.)  "Conflicting evidence must be disregarded, including evidence brought out on cross-examination of the plaintiff's witnesses." (*North Counties Engineering, Inc. v. State Farm General Ins. Co.* (2014) 224 Cal.App.4th 902, 920 (*North Counties*).)

Because a claim for punitive damages must be established by clear and convincing evidence (Civ. Code, § 3294, subd. (a)), when a defendant moves for a directed verdict

on a claim for punitive damages, "'the judge must view the evidence presented through the prism of the substantive [clear and convincing] evidentiary burden.'" (*Stewart v. Truck Ins. Exchange* (1993) 17 Cal.App.4th 468, 482 (*Stewart*).)[5] Thus, the trial court must keep the higher burden of proof in mind in ruling on a motion for directed verdict on a punitive damages claim. (*Stewart,* at p. 482.)

## C. *Managing agent*

Defendant contends the motion for directed verdict in its favor on plaintiff's punitive damages claim was properly granted because plaintiff presented no evidence Brooke Reid or Stephen Vidmar, the employees of defendant who denied plaintiff's claim, were managing agents of defendant.

An award of punitive damages is authorized "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." (Civ. Code, § 3294, subd. (a).) An employer, however, is not liable for punitive damages "based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." (Civ. Code, § 3294, subd. (b).)

"[T]he Legislature intended the term 'managing agent' to include only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate

---

**5** Stewart reviewed the trial court's order granting the defendant's motion for nonsuit. The same standard is used to evaluate a motion for nonsuit and a motion for directed verdict. (*Quinn v. City of Los Angeles* (2000) 84 Cal.App.4th 472, 479.)

25.

policy. The scope of a corporate employee's discretion and authority under our test is therefore a question of fact for decision on a case-by-case basis." (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 566–567.)

In *Egan v. Mutual of Omaha Ins. Co*. (1979) 24 Cal.3d 809, the defendant, through McEachen, an agency claims manager, and Segal, an agency claims adjustor, denied the plaintiff's claim under his health and disability insurance policy. The defendant argued the award of punitive damages against it should have been reversed, because McEachen and Segal were not involved in high-level policy making, so they could not be considered managerial employees. (*Id*. at p. 822.) The court rejected that argument. "The determination whether employees act in a managerial capacity, however, does not necessarily hinge on their 'level' in the corporate hierarchy. Rather, the critical inquiry is the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy. When employees dispose of insureds' claims with little if any supervision, they possess sufficient discretion for the law to impute their actions concerning those claims to the corporation." (*Id*. at pp. 822–823.) Exercise of such authority "results in the ad hoc formulation of policy." (*Id*. at p. 823.) The court added: "'It must be remembered that we are here concerned with an insurance company dealing in disability insurance, not just any corporation. Manifestly, to plaintiff, [the claims representative's] actions were actions of defendant. [The claims representative] personally managed the most crucial aspects of his employer's relationship with its policyholders. Defendant should not be allowed to insulate itself from liability by giving an employee a nonmanagerial title and relegating to him crucial policy decisions.'" (*Ibid*.)

The court in *Major v. Western Home Ins. Co*. (2009) 169 Cal.App.4th 1197 (*Major*), followed the lead of *Egan*. The plaintiffs made a claim under their homeowners policy after their home was destroyed by fire. (*Major,* at p. 1204.) The defendant used Cambridge Integrated Services to administer its claims; the plaintiff's claim was assigned

to claims adjustor Anderson, who was untrained and overloaded with claims. (*Id*. at p. 1205.) When payment was delayed, the plaintiffs filed suit and Cambridge's regional manager/supervisor/claims representative Dare took over the file. (*Id*. at p. 1207.) Dare denied a portion of the plaintiffs' personal property claim, asserting the faxed receipts they sent to prove the amounts claimed were illegible. The plaintiffs had actually sent the receipts by mail. (*Id*. at p. 1207.)

The defendant challenged the award of punitive damages, asserting there was no evidence a managing agent committed the allegedly oppressive acts. The court disagreed. (*Major*, *supra*, 169 Cal.App.4th at p. 1219.) Although Dare and Anderson were not employees of the defendant, this did not prevent a finding that they were managing agents for purposes of a punitive damages award. (*Id*. at p. 1220.) Dare was Cambridge's regional manager/supervisor/claims adjustor; she managed 35 employees handling claims, oversaw the claims operations, trained adjustors, worked on the budget, and authorized payment of claims. (*Ibid*.) There was no day-to-day oversight of her claims handling functions. (*Ibid*.) Most importantly, she personally handled the plaintiffs' claim and made the decision to refuse to pay the benefits the jury ultimately awarded, based on the false claim the faxed receipts were illegible. (*Ibid*.) Claims managers that exercise substantial discretionary authority to pay or deny claims, with little or no supervision, "exercise 'substantial discretionary authority over decisions that ultimately determine corporate policy.'" (*Id*. at p. 1221.)

Brooke Reid testified she worked for Nationwide Insurance, but was assigned to handle plaintiff's claim on behalf of defendant. Her title was senior property claims representative, and later master property claims representative. When she needed authorization for certain actions, such as hiring an independent adjustor or sending out a letter, she obtained it from her manager, Vidmar. Vidmar was the Nationwide claims manager responsible for plaintiff's claim. Reid and seven other claims representatives reported to him. Reid prepared the letter to plaintiff denying coverage, and Vidmar

approved it before it went out.  No one but Reid and Vidmar was involved in the decision to deny the claim.  The evidence was sufficient to raise an issue of fact for the jury regarding whether Reid and Vidmar were managing agents for purposes of an award of punitive damages.

### D.     *Sufficiency of the evidence*

Punitive damages may be awarded only when "the defendant has been guilty of oppression, fraud, or malice."  (Civ. Code, § 3294, subd. (a).)  In this context, oppression is defined as:  "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."  (Civ. Code, § 3294, subd. (c)(2).)  Fraud is defined as:  "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."  (Civ. Code, § 3294, subd. (c)(3).)  The statute defines malice as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."  (Civ. Code, § 3294, subd. (c)(1).)  Despicable conduct, as that term is used in the definitions of malice and oppression, has been defined as "'conduct which is so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people,' [and] as ' [having] the character of outrage frequently associated with crime.'"  (*Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1287.)

"'""Punitive damages are appropriate if the defendant's acts are reprehensible, fraudulent or in blatant violation of law or policy.  The mere carelessness or ignorance of the defendant does not justify the imposition of punitive damages.  …  Punitive damages are proper only when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate.'"'  [Citation.]  Thus, '"[p]unitive damages should not be allowable upon evidence that is merely

28.

consistent with the hypothesis of malice, fraud, … or oppressiveness.  Rather some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing.”’”  (*Food Pro Internat., Inc. v. Farmers Ins. Exchange* (2008) 169 Cal.App.4th 976, 994.)

In determining whether there was sufficient evidence that the jury should have been allowed to decide whether to award punitive damages, we must view the evidence in the light most favorable to plaintiff, disregard any conflicting evidence, and resolve all presumptions, inferences, and doubts in favor of plaintiff.  (*North Counties*, *supra*, 224 Cal.App.4th at p. 920.)  The directed verdict may stand only if, when so considered, and keeping in mind the clear and convincing standard of proof, there was no evidence of sufficient substantiality to support a verdict in plaintiff's favor.  (*Lances*, *supra*, 216 Cal. at p. 401; *Stewart*, *supra*, 17 Cal.App.4th at p. 482.)

The Hoppe report stated the bathtub and toilet, the family room floor, the second bedroom floor, and the storage nook in the kitchen were all sinking.  The Jundt report included photographs with captions, depicting underfloor supports resting on the soil.  Other photographs illustrated a six-inch sunken spot in the northwest bedroom floor, with a caption indicating the lowest spot was two inches lower.  The caption on a photograph depicting the floor separating from the wall states:  “The separation is more than 2 inches at the wall.  This would mean that the floor framing is so rotted that it is actually crushing on its own weight and the weight of the occupants.”  Reid acknowledged that Hoppe's December 21, 2010, report indicated he was unable to determine the cause of the floors sinking without further investigation.  Despite this evidence that portions of the floor had sunk to the ground, and the weight of occupants may have contributed to it, Reid testified she and Vidmar did not even consider whether the collapse provision would provide coverage for the loss.

Reid acknowledged that regulations governing insurance claims require the insurer to disclose to the insured all benefits, coverages, time limits, or other provisions of the insurance policy that may apply to the claim presented. (See Cal. Code Regs., tit. 10, § 2695.4, subd. (a).) She testified an insurance adjustor, in adjusting a claim, must look for coverage, rather than for facts that would justify denying the claim.

In a letter dated January 7, 2011, Reid advised plaintiff of all the exclusions that might apply. The first exclusion mentioned was for collapse, other than as provided in Other Coverage 9. Reid admitted the letter should have, but did not, set out the content of Other Coverage 9. No one advised plaintiff of potential coverage for lost rents, hidden decay damage, or hidden termite damage.

Reid's April 11, 2011, letter, which was approved by Vidmar, formally denied plaintiff's claim. As of the time of that letter, there was no doubt the floor members had fallen directly on the ground. The denial letter, however, did not mention the floors falling or collapse coverage; Reid testified this was because the loss was all related to water and termite damage. The letter also did not mention the floor framing being crushed by its own weight and that of the occupants. It did not explain the coverage for collapse from escape of water, hidden decay, or hidden insect damage. Reid conceded the damage beneath the floors was not observable until a hole was cut in the floor for access; she maintained the decay and insect damage were not hidden, however, because there was termite damage elsewhere in the house in open view and the insured could not "just turn a blind eye" to it. Reid testified there were no claims guidelines defining "hidden" for defendant.

Reid testified it did not occur to her or Vidmar to discuss collapse, because the house was so neglected, and there was so much damage it was obvious the perils listed in the collapse coverage were not going to be the only causes of the damage. Vidmar testified he did not identify the loss as a structural collapse. The denial letter, like the January 7, 2011, letter, also did not mention coverage for lost rent.

30.

By letter of April 8, 2011, plaintiff's public adjustor, DeCesare, asked Reid to provide all claim-related documents to him within fifteen days. (See Cal. Code Regs., tit. 10, § 2695.5, subd. (b), requiring an insurer to respond to the insured's communications within 15 calendar days.) Reid did not comply. There was a delay in providing a certificated copy of the policy, and there was no record Reid provided plaintiff copies of Hoppe's report or photographs. Vidmar instructed Reid to provide a copy of the policy, but no other documentation.

Plaintiff's expert on insurance claims handling, Kelley Taylor, testified regulations require the insurer to disclose every available coverage when a claim is made, even if the insurer does not think it applies. He disapproved of the January 7, 2011, letter because it cited the collapse exception, but failed to explain Other Coverage 9. He was critical of Reid and Vidmar for viewing Hoppe's photographs of the sinking floors, but not connecting the damage to the collapse coverage. Taylor also criticized the failure to obtain an independent legal opinion from an attorney regarding whether the collapse coverage applied. He opined it "look[ed] like the thorough investigation was to do anything and everything they could to deny coverage," "[c]onstantly management ratified kind of an intentional lack of investigation and ignoring the reports that they did get from the engineers," and "a lot of this seemed like they had kind of almost an intent," or they did not have adjustors and managers who really understood the coverage review the claim.

Disregarding conflicting evidence, giving plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence in favor of plaintiff (*Lances*, *supra*, 216 Cal. at p. 400), and keeping in mind plaintiff's burden to prove malice, fraud, or oppression by clear and convincing evidence (*Stewart*, *supra*, 17 Cal.App.4th at p. 482.), we conclude, as the trial court did, that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff on his claim for punitive damages. (*Lances*, at p. 400.) The evidence may be

31.

consistent with some improprieties in claims handling, but it does not rise to the level of reprehensibility necessary to support an award of punitive damages.  Even plaintiff's own expert did not state with assurance that defendant's personnel acted intentionally, despicably, or fraudulently; he only opined their conduct was "kind of … intentional" and "they had kind of almost an intent."  Accordingly, we find no grounds to reverse the trial court's order directing a verdict in favor of defendant on plaintiff's claim for punitive damages.

## VII.    Other Issues Raised in Respondent's Brief

In its respondent's brief, after addressing the issues raised by plaintiff in his opening brief, defendant seeks review of two of its motions in limine and six of its proposed special jury instructions.  It asserts that, if retrial of the case is ordered, these matters present issues of law that are necessary to the final determination of the case and this court is authorized to review them pursuant to Code of Civil Procedure section 43.[6]

Plaintiff moved to strike the portion of the respondent's brief affirmatively requesting rulings on the motions in limine and proposed jury instructions.  Plaintiff contends the respondent in an appeal cannot raise new issues, not addressed in the appellant's appeal, unless respondent is authorized to do so by section 906.  Section 906 provides:

> "Upon an appeal pursuant to Section 904.1 or 904.2, the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party, including, on any appeal from the judgment, any order on motion for a new trial, and may affirm, reverse or modify any judgment or order appealed from and may direct the proper judgment or order to be entered, and may, if necessary or proper, direct a new trial or further proceedings to be had.  The respondent, or party in whose favor the judgment was given, may, without appealing from such judgment, request the reviewing court to

---

[6]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

32.

and it may review any of the foregoing matters for the purpose of determining whether or not the appellant was prejudiced by the error or errors upon which he relies for reversal or modification of the judgment from which the appeal is taken. The provisions of this section do not authorize the reviewing court to review any decision or order from which an appeal might have been taken." (§ 906.)

Plaintiff's position is that this section authorizes a respondent to request that the court review rulings or other matters not challenged by the appellant only when the matters involve "determining whether or not the appellant was prejudiced by the error or errors upon which [the appellant] relies for reversal … of the judgment from which the appeal is taken." (§ 906.) If the respondent seeks review for any reason other than to show appellant was not prejudiced by the order or judgment being appealed, then the respondent must file a cross-appeal. Because defendant's request for review of its motions and proposed jury instructions was not addressed to any issue of prejudice, plaintiff contends the court lacks jurisdiction under section 906 to review them.

Defendant does not seek review of matters pursuant to section 906, however. It requests guidance for the parties and the trial court on issues that it contends will be raised in the event this court orders a retrial of the case. Such guidance is authorized by section 43, which provides: "The … courts of appeal[] may affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had. In giving its decision, if a new trial be granted, the court shall pass upon and determine all the questions of law involved in the case, presented upon such appeal, and necessary to the final determination of the case."

Generally, appellate courts that address such issues do so for the guidance of the trial court and to avoid repetitious appeals, when the issue will undoubtedly or likely be raised on retrial, and when the parties have fully briefed the issue and presented it to the appellate court for decision. (*Southern Cal. Gas Co. v. Public Utilities Com.* (1990) 50 Cal.3d 31, 46; *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 821, fn. 18; *Yarrow v.*

*State* (1960) 53 Cal.2d 427, 439–440; *Saller v. Crown Cork & Seal Co., Inc.* (2010) 187 Cal.App.4th 1220, 1237–1238; *Ovando v. County of Los Angeles* (2008) 159 Cal.App.4th 42, 66; *Mossman v. Superior Court* (1972) 22 Cal.App.3d 706, 710–711.) "[A] court should avoid advisory opinions involving hypothetical facts," and it may decline to rule on issues that may not arise on retrial. (*Benitez v. North Coast Women's Care Medical Group, Inc*. (2003) 106 Cal.App.4th 978, 991.)

Section 43 requires this court to address additional issues, not necessary to the decision on the appeal, only if four elements are present: (1) the matter will be remanded for a new trial; (2) the issues are questions of law involved in the case; (3) the issues were presented on appeal; and (4) the issues are necessary to the final determination of the case. As we read the cases applying this section, it is appropriate for the reviewing court to address an issue that is not necessary to resolution of the appeal when the issue is fully argued by the parties in their briefs on appeal, the court decides the appeal on a ground that does not require a ruling on that issue, but it is clear from the discussion before the reviewing court that the issue is likely to require resolution on retrial.

The issues on which defendant seeks rulings were not presented by plaintiff's appeal. Plaintiff raised two issues on appeal, regarding the application of the efficient proximate cause doctrine to his insurance claim and the propriety of the trial court's directed verdict on his punitive damages claim. Those were the only issues presented and briefed by plaintiff.

Defendant seeks review of a motion in limine and a related proposed jury instruction pertaining to the definition of the word "hidden," as used in Other Coverage 9. The trial court tentatively rejected defendant's proposed jury instruction, expressing its intent to instruct on a dictionary definition of the term instead. The record contains no final ruling on either the motion or the proposed jury instruction. The second motion in limine and the other five jury instructions defendant seeks to have reviewed generally address issues of manifestation or discovery of the loss and the requirement that the loss

34.

occur during the policy period. Both are beyond the scope of the issues raised by plaintiff's appeal.

We decline to roam so far afield from the issues actually presented by plaintiff's appeal challenging the bases for the directed verdicts. Defendant has not requested that we simply rule on discrete questions of law likely to arise on retrial. Rather, it has asked that we pass on the specific language of particular proposed jury instructions, some of which defendant represents the trial court indicated it would give in modified form. The trial court's intended modifications are not in the record. We note that some of the proposed jury instructions, as presented, are somewhat lengthy, argumentative, and at times redundant. We will refrain from issuing an advisory opinion and leave it to the trial court in the first instance to work with the parties to craft jury instructions that reflect the applicable law and are understandable to the jury.

### *DISPOSITION*

The judgment on plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing is reversed and remanded for retrial. On retrial, the trial court is instructed to enter judgment in favor of defendant on plaintiff's claim for punitive damages, in accordance with the directed verdict already entered.

The parties will bear their own costs on appeal.


_____
HILL, P.J.

WE CONCUR:


_____
LEVY, J.


_____
PEÑA, J.

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ARTYUN VARDANYAN,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>AMCO INSURANCE COMPANY,<br><br>    Defendant and Respondent. | F069953<br><br>(Super. Ct. No. 11CECG02112) |

It appearing that part of the nonpublished opinion in the above entitled matter filed on December 11, 2015, meets the standards for publication specified in California Rules of Court, rule 8.1105(c), IT IS ORDERED that the opinion be certified for publication in the Official Reports with the exception of parts VI. and VII. of the Discussion.


                                                                    HILL, P.J.

WE CONCUR:



  LEVY, J.



  PEÑA, J.