Filed 4/9/26  The Racquet Centre v. Cal. Capital Ins. Co. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE RACQUET CENTRE et al., | B344510 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 23STCV13092) |
| v. | |
| CALIFORNIA CAPITAL INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel M. Crowley, Judge.  Affirmed.

Scheidemantle Law Group, David R. Scheidemantle, and Adam D. Wieder for Plaintiffs and Appellants.

Gladstone Weisberg, Gene A. Weisberg, and Darlene M. McIver for Defendant and Respondent.

_____

The Racquet Centre and VDA Property Company (Plaintiffs) appeal from a judgment entered after the trial court determined following a bench trial that their businessowners insurance policy did not cover their claim of loss from water intrusion that led to an explosion in an underground utility vault that in turn caused an extended power outage at their property. California Capital Insurance Company (California Capital) denied Plaintiffs' claim under a coverage exclusion for continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more. Plaintiffs argue the trial court erred in determining the exclusion was conspicuous, plain, and clear and thus enforceable against their claim. They also argue the court erred in not determining they were entitled to coverage under an exception to a separate exclusion that states the insurer will pay for loss caused by an explosion that results from certain water-related events. We reject each argument and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Insurance Policy*

The Racquet Centre owns a commercial shopping center in Studio City. VDA Property Company is the general partner of The Racquet Centre. Both entities are named insureds in a businessowners policy issued by California Capital.

Section A. of Plaintiffs' policy provides that California Capital "will pay for direct physical loss of or damage to Covered Property at the premises . . . caused by or resulting from any Covered Cause of Loss." The policy defines covered causes of loss as any direct physical loss unless, as relevant here, "the loss is . . . Excluded in Section B., Exclusions." Section B. contains five

numbered paragraphs setting forth exclusions for various types of loss.

An endorsement to the policy—titled "Businessowners Special Property Coverage Limitations and Exclusions Endorsement"—adds a sixth paragraph to the list of exclusions under Section B. that states in full: "6. Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more." The endorsement provides that "all other provisions of the policy apply unless modified by this endorsement."

Also relevant here, one of the other enumerated exclusions under Section B. excludes coverage for loss caused by certain "Water" events but provides an exception to the exclusion if the Water event results in an explosion that causes loss. The "water exclusion" and the "explosion exception" thereto under Section B.1.g. provide as follows:

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. [¶] . . . [¶]

   g. Water
      (1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
      (2) Mudslide or mudflow;
      (3) Water that backs up or overflows from a sewer, drain or sump; or

3

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But if Water, as described in B.1.g.(1) through B.1.g.(4), results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

B. *The Loss and Insurance Claim*

Plaintiffs lease a portion of their property to a grocery store. In an underground utility vault located beneath the grocery store, Los Angeles Department of Water and Power maintains electrical equipment that is used to deliver power to the property.

In July 2022, the property experienced a power outage caused by electrical arcing or an electrical explosion that occurred in the underground vault. Investigation showed the arcing or explosion was caused by water intruding into the vault. Water entered the vault directly below a deli cooler that grocery store employees hosed down every day. The grocery store had experienced long-term clogging and flooding of floor drains in the area. Large cracks were observed in the concrete floor above the

4

vault and water stains were observed running down the vault's wall to where water contacted electrical equipment.

Two days after the incident, Plaintiffs reported a claim to California Capital. California Capital reserved its rights as to the claim and later denied the claim under the continuous or repeated seepage or leakage exclusion.

C.    *The Lawsuit and Trial*

In June 2023, Plaintiffs filed this lawsuit against California Capital alleging the insurer had failed to pay their claim despite it being covered under the policy. Plaintiffs alleged causes of action for breach of contract, declaratory judgment, bad faith, and violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.).

The case proceeded to a trial, which the trial court bifurcated upon the parties' request. The first phase was a bench trial to determine "whether the loss that Plaintiffs presented to [California Capital] is covered under the insurance policy" and, if not, whether California Capital waived its right to assert the claim was not covered.[1]

Before the bench trial, the parties stipulated to 33 facts, including that "the Property experienced an electrical outage caused by electrical arcing or electrical explosion that occurred in the Vault" and that "[w]ater intrusion into the vault and along the Vault walls contacted [electrical equipment] and caused the Incident." The parties also stipulated that "[a]s a result of the

---

[1]    If the court determined Plaintiffs' claim was covered, a jury would determine whether California Capital breached the implied covenant of good faith and fair dealing and, if so, whether Plaintiffs were entitled to punitive damages.

5

issues at the [grocery store's] deli cooler, water that had been repeatedly leaking or seeping into the Vault from [the store] for 14 days or more contacted [electrical equipment] and resulted in [electrical] arcing and an electrical explosion, which caused the power outage at the Property." The parties further stipulated that they were not aware of any other source of water that entered the vault and caused the loss.

California Capital argued in trial briefing and during trial that it properly denied coverage because the continuous or repeated seepage or leakage endorsement established an enforceable coverage exclusion and Plaintiffs' claim fell within that exclusion under its plain language and the stipulated facts. Plaintiffs countered that the continuous or repeated seepage or leakage exclusion was not an enforceable coverage exclusion because it was not conspicuous, plain, and clear. They asserted that, in contrast to the other enumerated exclusions under Section B., the continuous or repeated seepage or leakage exclusion did not include the limiting phrase "we will not pay for loss or damage" or a causal standard for its application such as "caused by or resulting from" and thus did not clearly preclude coverage for their claim.[2]

Plaintiffs alternatively argued their claim was covered based on the explosion exception to the water exclusion under Section B.1.g.(4), because water seeped "under the ground surface" and "through openings" as it passed from the grocery store into the underground vault where it led to an explosion. California Capital responded that the explosion exception was

_____

[2] The trial court denied Plaintiffs' motion for summary adjudication on their declaratory relief cause of action that relied on the same argument.

only applicable to the water exclusion, which did not apply and did not serve as a basis for the denial of Plaintiffs' claim because the facts did not show water under the ground surface as required under Section B.1.g.(4). Citing *Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1208 (*Haynes*), California Capital further argued that even if the water was under the ground surface, the explosion exception did not provide coverage because the continuous or repeated seepage or leakage exclusion was added to the policy by an endorsement and thus controlled over any conflicting terms in the policy.

The court concluded Plaintiffs' claim was not covered under the policy based on the continuous or repeated seepage or leakage exclusion. The court determined the exclusion was conspicuous, plain, and clear. It also found that California Capital had not waived its right to deny coverage.[3] In its written ruling the court did not expressly address Plaintiffs' argument that the explosion exception under Section B.1.g. applied to provide coverage.

Plaintiffs timely appealed from the judgment entered in California Capital's favor.

## DISCUSSION

A. *Standard of Review and Applicable Law*

" 'In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo, and we review the trial court's findings of fact for

---

[3] Plaintiffs do not now challenge the determination that California Capital did not waive its right to deny their claim. (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31 [under California law, "waiver requires the insurer to intentionally relinquish its right to deny coverage"].)

7

substantial evidence.' " (*State of California ex rel. Rapier v. Encino Hospital Medical Center* (2022) 87 Cal.App.5th 811, 828; accord, *Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 162.)  Where the material facts are not disputed, interpretation of an insurance policy is solely a question of law.  (*Haynes*, *supra*, 32 Cal.4th at p. 1204; accord, *Dua v. Stillwater Ins. Co.* (2023) 91 Cal.App.5th 127, 136.)

"In general, interpretation of an insurance policy . . . is decided under settled rules of contract interpretation."  (*State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 194; accord, *Yahoo Inc. v. National Union Fire Ins. Co. etc.* (2022) 14 Cal.5th 58, 67.)  " 'Our goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions.  [Citations.]  "If contractual language is clear and explicit, it governs."  [Citations.]  If the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], we interpret them to protect " 'the objectively reasonable expectations of the insured.' " ' " (*Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 321; accord, *Yahoo Inc.*, at p. 67.)

" 'Property insurance . . . is an agreement, a contract, in which the insurer agrees to indemnify the insured in the event that the insured property suffers a covered loss.  Coverage, in turn, is commonly provided by reference to causation, e.g., "loss caused by . . ." certain enumerated perils.' " (*Garvey v. State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406.)  In contrast, Plaintiffs' policy is what is known as an " 'all-risk' " policy, which "provides coverage for all losses not expressly excluded by the policy." (*Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 751, fn. 2 (*Julian*).)

Generally, when a coverage issue exists, "[t]he burden is on an insured to establish that the occurrence forming the basis of its claim is within the basic scope of insurance coverage. [Citations.] And, once an insured has made this showing, the burden is on the insurer to prove the claim is specifically excluded." (*Aydin Corp. v. First State Ins. Co.* (1998) 18 Cal.4th 1183, 1188; accord, *Vardanyan v. AMCO Ins. Co.* (2015) 243 Cal.App.4th 779, 796 (*Vardanyan*).) When a claim arises from an all-risk policy, however, the insured does not have to prove its loss was proximately caused by a covered peril "because the policy covers *all risks* save for those risks specifically excluded by the policy." (*Vardanyan*, at p. 796.) Instead, the insurer, " 'since it is denying liability upon the policy, must prove the policy's noncoverage of the insured's loss—that is, that the insured's loss was proximately caused by a peril specifically excluded from the coverage of the policy.' " (*Id.* at pp. 796-797.)

An exception to a coverage exclusion serves to "reinstate" coverage where the exclusion would otherwise apply. (*Aydin Corp. v. First State Ins. Co.*, *supra*, 18 Cal.4th at p. 1192; accord, *Old Republic Ins. Co. v. Superior Court* (1998) 66 Cal.App.4th 128, 144 ["The function of an exception to an exclusionary clause is to give back coverage taken away by the exclusion."], disapproved on other grounds in *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 841, fn. 13; Rest., Liability Ins., § 32(5) ["[a]n exception to an exclusion narrows the application of the exclusion"].) As part of its burden when an all-risk policy is at issue, the insurer must prove that coverage is not provided through any exception to an exclusion on which the insurer relies. (See *Strubble v. United Services Auto. Assn.* (1973) 35 Cal.App.3d 498, 504-505 [the insurer "had to negative its

9

exception (earthquake) to its exclusion (earth movement) since the burden of proof of its defense of noncoverage of the policy sued on rested on it"]; see also *Jordan v. Allstate Ins. Co.* (2004) 116 Cal.App.4th 1206, 1221-1222 [insurer not entitled to summary judgment where triable issue remained as to whether an "additional coverage" exception to the policy's "collapse" exclusion provided a basis for coverage].)

To protect the insured's objectively reasonable expectations, "policy exclusions are strictly construed [citations], while exceptions to exclusions are broadly construed in favor of the insured." (*E.M.M.I. Inc. v. Zurich American Ins. Co.* (2004) 32 Cal.4th 465, 471; accord, *Vardanyan*, *supra*, 243 Cal.App.4th at p. 792.)

B.     *California Capital Proved the Continuous or Repeated Seepage or Leakage Exclusion Applied to Plaintiffs' Loss*

California Capital met its burden to show the continuous or repeated seepage or leakage exclusion applied to Plaintiffs' claim.

Section A. of the policy provides that California Capital "will pay for direct physical loss of or damage . . . caused by or resulting from any Covered Cause of Loss." Section A.3. defines "Covered Causes Of Loss," as "Risks of Direct Physical Loss unless the loss is . . . [e]xcluded in Section B., Exclusions." ~(5 JA 750)~ Section B. contains five numbered paragraphs of exclusions. In addition, as relevant here, the "Businessowners Special Property Coverage Limitations and Exclusions Endorsement" states that "Section B. Exclusions is amended" and that "[t]he following exclusion is added to Section B. Exclusions: 6. Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more." The endorsement thus adds a

sixth exclusion for loss caused by continuous or repeated seepage or leakage of water.

The parties stipulated at trial that Plaintiffs' loss was caused by an electrical explosion that resulted from water repeatedly leaking or seeping into the vault from floor drains in the grocery store for 14 days or more. Thus, California Capital carried its burden to prove Plaintiffs' loss fell within the Section B.6. exclusion for continuous or repeated seepage or leakage of water.

C.    *The Continuous or Repeated Seepage or Leakage Exclusion Was Conspicuous, Plain, and Clear*

Plaintiffs contend that even if the continuous or repeated seepage or leakage exclusion applies to their claim, it was not an enforceable coverage exclusion under the policy. Plaintiffs describe the exclusion as "ungrammatical and inconspicuous" and emphasize that it was added through an endorsement "buried deep in the policy far from the provision it purported to modify."

"[T]o be enforceable, any provision that takes away or limits coverage reasonably expected by an insured must be 'conspicuous, plain and clear.' [Citation.] Thus, any such limitation must be placed and printed so that it will attract the reader's attention. Such a provision also must be stated precisely and understandably, in words that are part of the working vocabulary of the average layperson. [Citations.] The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer." (*Haynes*, *supra*, 32 Cal.4th at p. 1204.) This burden honors " 'the fundamental principle that an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear.' " (*Ibid*.)

11

Contrary to Plaintiffs' contention, the continuous or repeated seepage or leakage exclusion is sufficiently conspicuous, plain, and clear. While the exclusion is not in the main body of the policy, " 'it is positioned and printed in a manner that will attract the reader's attention.' " (*Ortega v. Topa Ins. Co.* (2012) 206 Cal.App.4th 463, 476.) The endorsement adding the exclusion to the policy is identified in a list of policy forms on the first two pages of the policy. The endorsement is less than a full page, in a font of a reasonable size, space, and style, and introduced with bold, capital letters stating, "This endorsement changes the policy. Please read it carefully." (See *Palub v. Hartford Underwriters Ins. Co.* (2001) 92 Cal.App.4th 645, 652 [an exclusion in a single-page endorsement was conspicuous even if it was not in the main body of the policy where the exclusion was set forth in reasonable text and the policy cover sheet warned the insured that endorsements could modify the policy], disapproved on other grounds in *Julian*, *supra*, 35 Cal.4th at p. 759.)

The language of the endorsement and the Section B.6. exclusion is also precise and understandable. While it requires piecing together a few provisions, none of the language in these provisions is complicated or confusing. Nor is there any ambiguity. Rather, the only reasonable interpretation of the relevant language is the policy excludes claims of loss arising from continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.[4] Accordingly, the continuous or repeated seepage or water exclusion is enforceable.

---

[4]    When questioned at trial, Plaintiffs were unable to provide an interpretation of the endorsement other than the one offered by California Capital.

12

D.   *Plaintiffs Are Not Entitled to Coverage Under the Explosion*
     *Exception to the Water Exclusion*

Plaintiffs argue they were entitled to coverage under the explosion exception to the water exclusion under Section B.1.g.[5] Plaintiffs argue that, under the facts here, the explosion exception should apply instead of the continuous or repeated seepage or leakage exclusion.  They point to language in the continuous or repeated seepage or leakage endorsement that "all other provisions of the policy apply unless modified by this endorsement" and argue nothing in the endorsement or its exclusion "overrides" the explosion exception as a "separate avenue for coverage."  Instead, Plaintiffs contend, the continuous or repeated seepage or leakage exclusion applies only when claimed loss "is in the form of a 14-day seepage or leakage of water *alone,* and not, by contrast, where water 'results' in an 'explosion.' "  In other words, according to Plaintiffs, the Section B.1.g. exception "covers explosion damage caused by water" and the Section B.6. exclusion "exclude[s] water seepage damage in which there is no explosion."

Without explicitly arguing so, Plaintiffs effectively posit that the continuous or repeated seepage or leakage exclusion is subject to and limited by the explosion exception.  The problem with this theory is this is not what the policy actually says.  As set forth in the endorsement, the continuous or repeated seepage or leakage exclusion under Section B.6. excludes coverage for all claims—with no exceptions—arising out of continuous or

---

[5]   The court heard argument on this theory at trial but did not expressly address it in its written ruling.

13

repeated seepage or leakage of water that occurs over a period of 14 days or more. On the other hand, the explosion exception applies to reinstate coverage "if Water, as described in [Section] B.1.g.(1) through B.1.g.(4), results in fire, explosion or sprinkler leakage." The explosion exception does not refer to or limit the absolute language in the continuous or repeated seepage or leakage exclusion. While the exception narrows the application of the water exclusion under Section B.1.g., the separate exclusion for continuous or repeated seepage or leakage under Section B.6. is unqualified. (See *Julian*, *supra*, 35 Cal.4th at p. 759 [" 'An insurance policy may exclude coverage for particular injuries or damages in certain specified circumstances while providing coverage in other circumstances.' "]; Rest., Liability Ins., § 32, cmt. d ["Exclusions may contain exceptions that narrow the application of the exclusion. *Such exceptions operate only to narrow the exclusions in which they appear*, not to expand coverage beyond that stated by other insuring clauses in the policy."], italics added.) Nor does it make any difference that these separate exclusions both pertain to water-related loss. (See *Julian*, at p. 759 ["an insurer is not absolutely prohibited from drafting and enforcing policy provisions that provide or leave intact coverage for some, but not all, manifestations of a particular peril"].) Rather, the natural reading of the plain language of these separate provisions is that application of the continuous or repeated seepage or leakage exclusion is not subject to or limited by the explosion exception to the water exclusion. To say otherwise would rewrite the policy, which we may not do. (*Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1073 [" '[W]e do not rewrite any provision of any contract, [including an insurance policy], for any purpose.' "].)

While Plaintiffs contend that any ambiguity regarding the interplay of the provisions should be interpreted in their favor as the insureds, we do not find any conflict between the terms that creates ambiguity because the exclusion is not subject to the exception. But even if we did find ambiguity, we would not resort to the general rule that any ambiguity must be resolved in favor of the insured. (*Minkler v. Safeco Ins. Co. of America, supra*, 49 Cal.4th at p. 321.) Instead, we would resolve the conflict in favor of enforcing the Section B.6. exclusion because it was added to the policy through an endorsement. As the Supreme Court explained in *Haynes, supra*, 32 Cal.4th at page 1208, "where the terms of an effective endorsement conflict with terms in the main body of [a form] policy, the endorsement controls." (See also *Continental Casualty Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 430-431 ["if there is any ambiguity in an insurance policy it must be resolved against the insurer [citations], nevertheless if there is a conflict in meaning between an endorsement and the body of the policy, the endorsement controls"]; *Mission National Ins. Co. v. Coachella Valley Water Dist.* (1989) 210 Cal.App.3d 484, 497 ["the terms of the endorsement control over the printed terms of the policy"].) Pursuant to the endorsement, the policy does not provide coverage for loss arising from continuous or repeated seepage or leakage that occurs over a period of 14 days or more. Thus, the policy does not provide coverage for Plaintiffs' loss, regardless of the explosion exception under Section B.1.g.

We also reject Plaintiffs' argument that, because their policy is an all-risk policy, California Capital had and failed to carry its burden at trial to prove the explosion exception did not apply as an independent basis for coverage. This was not at issue at trial because, as discussed, California Capital relied on the

15

continuous or repeated seepage or leakage exclusion, which is not subject to the explosion exception.  (Cf. *Strubble v. United Services Auto. Assn.*, *supra*, 35 Cal.App.3d at pp. 504-505 [the insurer "had to negative its exception (earthquake) to its exclusion (earth movement) since the burden of proof of its defense of noncoverage of the policy sued on rested on it"].)  Instead, in proving Plaintiffs' loss arose from continuous or repeated seepage or leakage of water over a period of 14 days or more, California Capital carried its burden to prove "the insured's loss was proximately caused by a peril specifically excluded from the coverage of the policy."  (*Id.* at p. 504.)  As discussed, basic contract interpretation principles lead to the conclusion that the explosion exception under Section B.1.g. was inapplicable.  Accordingly, California Capital did not have to disprove that the water intrusion was "water under the ground surface . . . seeping through . . . openings" or otherwise factually fell within the Section B.1.g. exception.

Plaintiffs contend the interpretation that the explosion exception does not apply renders it mere surplusage or nearly meaningless.  To the contrary, read as a whole, the policy provides that the explosion exception applies when its factual predicates are met but those of the continuous or repeated seepage or leakage exclusion are not.  (See *National Union Fire Ins. Co. v. Lynette C.* (1991) 228 Cal.App.3d 1073, 1082 ["exceptions to exclusions remain subject to and limited by all other related exclusions"]; accord, *St. Paul Fire & Marine Ins. Co. v. Coss* (1978) 80 Cal.App.3d 888, 896.)

In sum, the trial court correctly determined that the Section B.6. exclusion for continuous or repeated seepage or

16

leakage applies to Plaintiffs' loss, and California Capital properly denied Plaintiffs' claim.

## DISPOSITION

The judgment is affirmed.  California Capital shall recover its costs on appeal.


                                        STONE, J.

We concur:


    SEGAL, Acting P. J.


    FEUER, J.